# KANSAS CITY v. KANSAS CITY BELT RAILWAY COMPANY, Appellant.

### Division Two, March 14, 1905.

1. **APPELLATE JURISDICTION:** Condemnation.   The Supreme Court has appellate jurisdiction over a condemnation case involving title to real estate, whatever may be the amount of the damages awarded.

2. **CONDEMNATION:** Street: Benefit Assessed Against Railroad. By an ordinance granting a railroad company a franchise to construct, maintain and operate a railway upon or across all streets, the railroad company was required to keep the space between the tracks "planked with oak planks the whole width of the street crossed," and "to keep the street so crossed for a distance of not less than six feet from the outside rails in good condition so as to afford a safe and convenient crossing of the tracks," and when required by the city, to maintain signboards, and if the city should "at any time cause to be paved a part of any street crossing" the railroad company was re-

quired, "instead of planking," to "pave and keep paved such part of said street so crossed," and this franchise was accepted by the railroad company. *Held,* that it was the duty of the railroad company, over whose tracks a crossing was condemned for the opening and establishing of a street, to put in a suitable crossing, sign-boards, lights, etc., at its own expense, and the court properly refused to instruct the jury to allow the cost of such structures to be charged against the city, in assessing the railroad company's damages.

3. ———: ———: ———: **Reasonable Terms: Estoppel.**   The railroad company having sought and accepted the franchise "upon the terms and conditions in the ordinance specified," is estopped from now saying that the terms are not reasonable. Besides, the terms were in no sense unreasonable.

4. ———: ———: ———: **Cattle Guards: Wing Fences.**   Where the crossing is of a street in a city, the instructions should not refer to cattle guards and wing fences. The statute has no application to cattle guards and fences at a street crossing in a city.

5. ———: ———: ———: **Cost of Grading.**   Proceedings for the condemnation of property for a public street and for grading subsequent to condemnation are entirely separate and distinct under the charter of Kansas City, and in the condemnation proceeding to establish a street all evidence as to the cost of grading the street from a line six feet outside the rails of a railroad to the uttermost line of its right-of-way, should be excluded.

6. **APPELLATE PRACTICE: Erroneous Instruction for Appellant.** The respondent who does not appeal is not in a position to complain of instructions given for appellant.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* and *Samuel W. Sawyer* for appellant.

(1) The court erred in excluding evidence as to the expense necessarily imposed on appellant by reason of this proceeding. 8 Am. & Eng. Ency. Law (2 Ed.), 380; 26 Am. & Eng. Ency. Law (2 Ed.), 646; 1 Rorer on

Railroads, 554; 1 Redfield on Railways (6 Ed.), 420; 2 Lewis on Em. Domain (2 Ed.), sec. 491; City of Kansas v. Railroad, 102 Mo. 633; McQuillin on Municipal Ordinances, secs. 289, 576; Hook v. Railroad, 133 Mo. 313; Railroad v. Gordon, 157 Mo. 71; Railroad v. Board of Commissioners, 45 Kan. 716; Board of Commissioners v. Railroad, 46 Kan. 104; Railroad v. Chautauqua, 49 Kan. 763; In re Opening First St., 58 Mich. 648; Railroad v. Hough, 61 Mich. 507; Commissioners v. Railroad, 90 Mich. 385; Commissioners v. Railroad, 51 Am. & Eng. R. R. Cases 525; Grand Rapids v. Bennett, 106 Mich. 528; Detroit v. Railroad, 112 Mich. 304; Railroad v. Dist. Court, 42 Minn. 247; Railroad v. Porter, 43 Minn. 527; Morris, etc., Co. v. State, 4 Zabr. (N. J.) 62; State v. Mayor of Bayonne, 51 N. J. L. 428; Railroad v. Mayor, etc., of Newark, 61 N. J. L. 80; Railroad v. Plymouth, 14 Gray (Mass.) 155; Railroad v. Railroad, 121 Mass. 124; Railroad v. Bloomington, 76 Ill. 447; Indianapolis v. Gas Co., 27 L. R. A. 514; Prairie County v. Fink, 65 Ark. 492. (2) The court erred in refusing instruction 2, requested by the railway company. Railroad v. Mayor, etc., of Newark, 61 N. J. L. 80.

*R. J. Ingraham* for respondent.

(1) Appellant, by the acceptance of the franchise, made a plain, unqualified grant of a right of way for streets across its tracks, and consequently is not entitled to compensation for either the land or damages. The city acquired the same right by this language as it could by condemnation. And the law conclusively presumes that all damage ensuing from a reasonable, non-negligent exercise of the right granted is waived, or compensation therefor made in advance as a part of the consideration for the franchise. Righter v. Philadelphia, 161 Pa. St. 73; Harrelson v. Railroad, 151 Mo. 496; Fremont v. Harlan, 50 Neb. 698; Watts v.

Railroad, 39 W. Va. 196; Nunnemaker v. Railroad, 47 S. C. 485; Railroad v. Hunt, 14 Ill. App. 419; Ronslarger v. Chicago, etc., 115 Ind. 106; Railroad v. Adams, 58 Tex. 476; Railroad v. Smith, 111 Ill. 363; Railroad v. Swank, 105 Pa. St. 555; Benson v. Railroad, 78 Mo. 504; McCarty v. St. Paul, 31 Minn. 278; Gilbert v. Railroad, 69 Ga. 396; Narn v. Railroad, 28 Vt. 99; Stodgall v. Railroad, 43 Ia. 26; Updegrove v. Railroad, 132 Pa. St. 540; Kirk v. Railroad, 51 La. Ann. 667; Canaber v. Railroad, 156 N. Y. 474. (2) If there could be any doubt in this case about the grant of the right of way for the street being a waiver of compensation for the performance by appellant of its obligations under the statutes and ordinances respecting crossings, this is all set at rest by the agreement of appellant as made in the franchise. The city could have put this street across without condemnation. Union Depot Co. v. Railroad, 105 Mo. 373. Under the franchise appellant was not entitled to recover for any of the items claimed. Railroad v. Adams, 58 Tex. 476; Watts v. Railroad, 39 W. Va. 196; Fremont v. Harlan, 50 Neb. 698; Harrelson v. Railroad, 151 Mo. 496; Benson v. Railroad, 78 Mo. 504. (3) Every item of prospective expense about which appellant sought to put in its evidence could arise only from a performance of those things which may be in the future required by the city, under the exercise of its police power. Railroad v. City, 97 Wis. 418; sec. 807, R. S. 1879; Hurd v. Chappell, 90 Mo. App. 317; Downing v. Railroad, 94 Mo. App. 137. (4) Independent of the franchise contract between the parties hereto, the great weight of American authority sustains the proposition that, when a highway is extended across a railroad right of way, the railroad company is not entitled to damages occasioned by its obligation to obey existing or future police regulations. Railroad v. Chicago, 166 U. S. 226; Railroad v. City, 97 Wis. 418; Railroad v. Railroad, 118 Mo. 621; Railroad v. Railroad, 105 Ill. 400; Rail-

road v. City, 169 Ill. 169; Railroad v. City, 166 Ill. 87; Railroad v. City, 157 Ill. 48; Railroad v. Railroad, 30 Ohio St. 604; Railroad v. Chicago, 140 Ill. 315; Railroad v. Coms., 79 Me. 386; Railroad v. Deering, 78 Me. 61; Railroad v. Brownell, 24 N. Y. 345; Thorp v. Railroad, 27 Vt. 140; State v. Railroads, 29 Neb. 412; People, etc., v. Railroad, 70 N. Y. 569; Toledo v. Jacksonville, 67 Ill. 37; Erie v. Erie, 59 Pa. St. 174; Elliott on Railroads, sec. 1114; Blair v. Railroad, 20 Wis. 254; Gillam v. Railroad, 26 Minn. 265; State ex rel. v. Railroad, 42 Minn. 247; Wilder v. Railroad, 65 Me. 332; Albia v. Railroad, 71 N. W. 541; Kansas, etc., v. Coms., 45 Kan. 716; N. Y., etc., v. Appeal, 62 Conn. 527; N. Y., etc., v. Bristol, 151 U. S. 556; Railroad v. City, 60 Conn. 1; Railroad v. Greenwich, 52 N. Y. 510.

GANTT, J.—This is an appeal from the circuit court of Jackson county by the Kansas City Belt Railway Company, over whose tracks a crossing was condemned for the opening and establishing of Topping avenue from Independence avenue, in Kansas City, to the westerly line of Washington Park Boulevard in said city.

The proceeding is founded on an ordinance of said city, approved July 14, 1900. A jury was impaneled in accordance with the charter and ordinances of the city, and the cause heard, and on the eighth of June, 1901, the jury rendered their verdict allowing, among other damages to other parties, to the Kansas City Belt Railway Company $20, for crossing its tracks where the said Topping avenue intersects the same, under said ordinance. A judgment was duly entered vesting a right-of-way in Kansas City for the purposes specified in said ordinance and the cost of the said improvement assessed against the benefit district and Kansas City to pay said damages so awarded the said Belt Railway Company. A motion for a new trial was duly filed, heard and overruled, and an appeal granted to this

court. The land taken by this proceeding is 30 feet wide.

At the trial in the circuit court, the railway company claimed compensation for the putting in a suitable crossing, cattle guards, signs, lights, and so forth. The circuit court excluded all evidence as to the cost of these various structures, and refused an instruction asked by the railway company directing the jury to allow the cost of such structures, to which action of the court the company duly excepted at the time. These exceptions present the sole question involved in this appeal.

The jurisdiction of this appeal is vested in this court because it is a condemnation of real estate and thereby the title of defendant is affected. [Railroad v. Lewright, 113 Mo. 660; State ex rel. v. Rombauer, 124 Mo. 598; Paving Co. v. Hezel, 138 Mo. 232-3.]

It is insisted that the circuit court erroneously excluded evidence of the cost of planking the crossing of the street over the railroad tracks; of maintaining cattle guards; of wing fences; of gasoline lamps at the crossing; and of maintaining the street for six feet outside of its rails.

For a proper understanding of these contentions, it must be noted that by an ordinance of Kansas City, numbered 22948, passed and approved August 18, 1882, the City of Kansas granted said railway company a franchise to construct, maintain and operate upon the terms and conditions therein specified, a railroad in, upon, and across all streets, avenues and alleys of said city on a route therein specified.

Section 4 of said ordinance among other things provided that:

"Where said railroad crosses any street or avenue in the city now existing or hereafter laid out, or opened for public use, on or at the grade thereof, said Kansas City Belt Railway Company shall, at all times, keep the space between tracks and eighteen inches outside

of the outside rails, planked with oak planks, securely spiked down and in safe and passable condition, the whole width of the street or avenue crossed; and shall also keep the street or avenue so crossed for a distance of not less than six feet from the outside rails in good condition so as to afford a safe and convenient crossing of the tracks; and shall, if required by the city, erect and maintain at such crossings signboards, and perform all other duties devolved on the railroad company by section 807 of Revised Statutes of Missouri, and provided further, that if the City of Kansas shall at any time cause to be paved a part of any street or avenue crossing at the grade of said railroad, then said Kansas City Belt Railway Company shall, instead of planking and keeping in good condition, as aforesaid, a part of said street or avenue crossed by the railroad at grade, pave and keep well paved such part of said street or avenue so crossed; such pavement so to be made by said Kansas Belt Railway Company to be of the same kind, and constructed at the same time as the pavement outside of said part of the street or avenue crossed and adjoining the said part. The said Kansas City Belt Railway Company shall be subject to all ordinances of this city now in force concerning railroads, and to such general ordinances as may hereafter be passed by the Common Council of said city, in accordance with clause thirty-two, section 1 of article 3 of the present charter of said City of Kansas.''

And section 7 of said ordinance, *inter alia*, provides:

''The city shall, at all times, have the right to open new streets across said railroad and right of way therefor hereby granted, or otherwise acquired by the company, and also to carry the roadway of any street now existing, or hereafter made, whether inside or outside the present city limits, across such right of way at the grade of the railroad, or over the railroad on a bridge, leaving nineteen feet headway above the rail-

road, and to place and keep supports for any such bridge outside of the railroad tracks, but not so near as to interfere with the convenient operation of the same, and to maintain such bridges."

Section 12 of said ordinance provides:

"Sec. 12. This ordinance is passed, and grant of right-of-way made, subject to general laws of Missouri now, or hereafter, passed, and the provisions and terms of clause thirty-second, of section one, of article three, of an act of the General Assembly of Missouri, entitled, 'An Act to amend and revise the act incorporating the City of Kansas, approved February 22, 1853, and to revise and reduce into one act all acts, and parts of acts, amendatory thereof and supplemental thereto,' approved March 24, 1875, and all the powers given by such clause are retained and not given up or abridged, but may be exercised by the city."

On August 19, 1882, the said railway company accepted the said franchise.

At the request of the Kansas City Belt Railway Company the circuit court gave the following instructions:

"1. The jury are instructed that the right-of-way of the Kansas City Belt Railway Company across which Topping avenue is to be laid under these proceedings is property within the meaning of the laws of the State of Missouri, and that for the taking and use of a portion of such right of way of said railway company for said proposed avenue the railway company is entitled to just compensation, as are the owners of other pieces of property taken for the use of said proposed avenue. And in arriving at your verdict in this case and determining the damages to which the Kansas City Belt Railway Company is entitled for the opening of the proposed avenue you must allow it just compensation for the taking and use for the purposes of said proposed avenue of the portion of its right-of-way so to be taken and used.

"2.   The jury are instructed that in apportioning benefits for the opening of Topping avenue under these proceedings no benefits can be properly assessed against the right of way of the Kansas City Belt Railway Company which abuts on either side of said proposed avenue and on which are located its roadbed and tracks."

Under the franchise granted it by the above-mentioned ordinance, the said railway company constructed its railroad along, upon and across the streets, avenues and alleys of Kansas City.

I.   The first question which presents itself on this record is whether Kansas City, under the franchise which it granted defendant, is under obligation to pay, or, which is the same thing, allow it as damages, the cost of doing those things which are prescribed in the ordinance as police regulations which defendant undertook, when it applied for and obtained the franchise, to do itself.

The railway company complains that the court refused to allow the defendant the cost of planking the crossing, for cattle guards, wing fences, and lights at the crossing, and yet it stipulated and obligated itself as a part of its invaluable franchise that wherever its railroad crosses any street or avenue in the city now existing, "*or hereafter laid* or opened for public use," it would "*at all times keep the space* between tracks and *eighteen* inches outside of the *planks,* securely spiked down and in safe and passable condition, the whole width of the street or avenue crossed," and would also "keep the street or avenue so crossed for a distance of not less than six feet from the outside rails in good condition so as to afford a safe and convenient crossing of the tracks."

A like demand was made of the court to direct the jury to allow it as damages for signboards, containing the words, "railroad crossing," although it agreed it

would erect and maintain such signboards if required by the city.

When confronted with these provisions in its franchise, the railway company readily concedes that it is true it agreed to do all these things, *but not at its own expense*.

It is difficult to treat such a proposition seriously. The one sufficient answer to such a contention is that the city granted the valuable franchise of constructing, maintaining and operating a railroad in, upon and across its streets, "upon the terms and conditions in the ordinance specified," among which conditions and terms was that which required the defendant to plank all crossings of streets then existing or which should afterwards be laid and opened, which defendant's railroad should cross.  This language is too plain to be misunderstood.  It means defendant company was to make and maintain such crossings at its own expense, and not at the city's cost, and to forfeit the right-of-way whenever it refused or failed to carry out in every particular the conditions upon which it was granted.  It comes with little grace now to have the railway company say to the city, "We will do the things we agreed to do provided the city will first remunerate us for so doing."  Neither is there any force in the further insistence that these conditions were unreasonable.  The railway company having sought this franchise and agreed to the conditions which the city imposed are estopped from now saying the conditions are not reasonable.  The city had the absolute right to grant or refuse the railway company the right to use its streets as it saw fit, and when its consent was required it had the authority to prescribe the terms and conditions upon which the company could use them. It was not limited to a yes or no.  [Railroad v. Kirkwood, 159 Mo. l. c. 252-3.]

But it was in no sense unreasonable for the city to exact and require these plain and necessary regulations

for the protection of the lives, limbs and property of its citizens who had the right also to use its streets and to cross these tracks. The decisions in City of Kansas v. Railroad, 102 Mo. 633, and Railroad v. Gordon, 157 Mo. 71, in no way conflict with the views here expressed.

II.    The city did not see fit to appeal from the giving of the first instruction given by the court for defendant, and, therefore, is not in a position in this case to avail itself of any error in that respect, but nothing herein said is to be construed as sanctioning the giving of that instruction in view of the stipulations in the franchise ordinance.

III.    So much of defendant's instruction as referred to the necessity of cattle guards and wing-fences was clearly not the law, as the crossing was in the city at a place to which the State statute with respect to fences and cattle guards has no application.

IV.    Neither was there any error in excluding the evidence as to the cost of grading. Proceedings for condemnation of property and for grading subsequent to condemnation are entirely distinct and separate under the charter of Kansas City. [Art. 7, Charter of Kansas City 1889, "Condemnation;" art. 8, "Grading," 1889; art. 9, "Special Taxes," 1889.]

On this point we think the argument of the city counselor is well nigh conclusive. No obligation is placed upon the railway, either by ordinance or statute, to grade the street from a point six feet outside the rails to the uttermost point of its right of way on either side. If the city should decide in the future to raise this grade up to six feet of the rails, still the defendant would not by itself be put to that expense, because the cost of grading under the charter must be spread along the abutting property. [Art. 9, Charter of Kansas City, 1889.] The only possible damage which could result to defendant would be that which would ensue from a change of grade, and those dam-

ages, if any, must be estimated in any subsequent grading proceeding and not in a condemnation for establishing the street, and then only after the grade is established, and before the grading is done and paid for before the actual change of the grade, and this rule applies alike to abutting owners, whether private citizens or the railway, and the reason is obvious, because it is impossible to know in advance of the fixing of the new grade what the extent of the damages will be. It is apparent that until a grade is fixed it is utterly problematical and uncertain what, if any, damages will result. It might be so inconsiderable that no damage capable of estimation would ensue, or it might be so radical as to work great damage to abutting owners. The charter wisely separated this damage from that which could be estimated by the appropriation of the right of way. It thus appears that not one of the items of expense claimed by defendant was a proper subject of consideration by the jury, and each and all of them were correctly excluded on the offer of evidence and by refusing the instruction.

These views necessarily dispose of this case, but we have been invited by the learned counsel on both sides to determine whether, independent of the franchise itself, when a highway or street is extended across a railroad track or right of way, the railroad company is entitled to damages occasioned by its legal liability to obey and conform to existing or future police regulations.

The question is a most important one, as to which there is unquestionably much contrariety of judicial opinion, but in our opinion it is not necessary to determine it on this appeal, as we have already disposed of the grounds upon which this appeal is bottomed upon the plain terms of the franchise ordinance itself.

We think it the part of wisdom to settle this important question when a case is presented when that

question is decisive of the case, untrammelled with any special contract on the part of the railway company.

For the reasons assigned the judgment of the circuit court must be and is affirmed.

All concur.