# L. L. LOHNES, Respondent, v. L. J. BAKER, Appellant.

### Springfield Court of Appeals, May 8, 1911.

1. **WITNESSES: Evidence: Death of One Party: Action Against Administrator.** In a replevin suit against decedent's administrator, wherein plaintiff sought to establish a gift *causa mortis* from the decedent, it was error to permit the plaintiff to testify. (Revised Statutes, 1909, sec. 6354.) And although plaintiff's testimony in his examination in chief, had nothing to do with the gift and all the damaging testimony from him was elicited by the defendant, this cannot change the law which prohibits him from taking the stand.

2. **EVIDENCE: Secondary Evidence: Proving Contents of Letter: Laying Foundation.** A witness in her deposition, testified concerning the contents of a letter. The only foundation laid for this secondary evidence was the statement of the deponent, "I have not got the letter now." *Held*, that her testimony as to the contents of the letter should have, under the circumstances, been excluded.

3. **VERDICT: Jury: Three-Fourths Rule: Jury Less Than Twelve.** Where both parties agree that a civil case may be tried by a jury of nine men, a verdict signed by seven of the jury is sufficient.

4. **PRACTICE: Demurrer to Evidence: Waiver of Demurrer.** Although defendant interposed a demurrer to the evidence at the close of plaintiff's case, yet, where the demurrer is not again presented at the close of all the evidence and the court is not asked to instruct the jury to return a verdict for the defendant, the court committed no error in submitting the case to the jury.

5. **GIFT INTER VIVOS: Intention:. Delivery.** To constitute a valid gift *inter vivos*, there must be an intention to give and an actual delivery at the time to the donee, or to some one for him, of the property given.

6. **GIFT: Distinguished From Promise to Make Gift.** A gift cannot be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future and being without consideration is void.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Geo. M. Miley* for appellant.

(1) It is essential to a donation *inter vivos* that the gift should go into immediate effect, that it be absolute and irrevocable, and that the donor part with all present and future dominion over the property given and that there be an absolute delivery. In re Soulard, 141 Mo. 642; Dunn v. Bank, 109 Mo. 97; McCord v. McCord, 77 Mo. 166; Shafer v. Manning, 132 Ill. App. 570; Howe v. Ripka, 199 Mass. 359; Stark v. Kelley (Ky.), 113 S. W. 498. (2) A gift cannot be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future, and being without consideration is void. School District v. Sheidley, 138 Mo. 672. (3) The testimony of Annis Z. Fowler in her deposition, where she tells of the contents of a letter alleged to have been received from Mary E. Baker, upon the subject of the gift should not have been admitted, because the letter was the best evidence and the necessary foundation was not laid for oral testimony as to its contents. Punchard v. Masterson, 103 S. W. 826; Owensboro Wagon Co. v. Hall, 43 So. Rep. 71; McGill v. Fuller & Co., 88 Pac. 1038; Golson v. Ebert, 52 Mo. 260. (4) Where one of the original parties to the cause or contract is dead or insane, the other party to such contract or cause of action cannot testify either in his own favor or in favor of any other party claiming under him. R. S. 1909, sec. 6354; Bagnell v. Bank, 76 Mo. App. 121; Sess v. Griffith, 139 Mo. 322; Bieber v. Boeckman, 70 Mo. App. 503. (5) This case having, by agreement, been submitted to a jury of nine men, the three-fourths rule did not apply and the verdict signed by only seven of the jurors should not have been accepted by the court as a verdict and no judgment should have been rendered upon it by the court. R. S. 1909, sec. 7280; In re Hering, 133 App. Div. 293, 117 N. Y. S. 747.

*Sam Meeks* for respondent.

STATEMENT.—This was an action of replevin to recover a certain horse, harness and wagon. The action was commenced before a justice of the peace where defendant made default but appealed to the circuit court. Plaintiff claimed the property in question as a gift from his sister, Mary E. Baker, who had died testate about one year prior to the time this suit was commenced. The defendant was Mary E. Baker's husband and became executor of her will. By agreement of both parties, the case was tried in the circuit court by a jury of nine men and a verdict was returned for the plaintiff. The question in issue was whether there had been a gift of the property *inter vivos* as plaintiff claimed.

Plaintiff's evidence tended to show that about a year before Mary E. Baker's death she sought to find some steady employment for her brother Lucius, plaintiff herein, and to that end, opened a furniture store in Thayer, Missouri, where all the parties herein resided, and plaintiff was given at least partial control thereof. The sign on the store was "L. J. Baker," Mary E. Baker's husband. He, however, was a railway engineer, was absent much of the time, and it is not shown that he had any control over or interest in this store. Soon thereafter, Mary E. Baker bought and paid for the horse in question, the deal being between the seller and Lucius except as to the payment. For many years, Lucius had been in her employ, painting and otherwise caring for her many houses in Thayer, and the wagon and horse was used for hauling paints and ladders for this work besides doing the delivering for the furniture store.

One witness testified that he had a conversation with Mary E. Baker in this furniture store soon before her death in which she said she had bought the horse and wagon and harness for Lucius, that he had fixed it up, that it was a pretty well-contrived thing for the purpose, and that it was his except when she wanted to use the

horse; that she was in charge of the store at that particular time, Lucius having gone out to deliver some goods; that she told him (the witness) before buying the furniture store that she intended to fix Lucius up in some kind of business and that she left the impression on his mind that she intended to give the business to Lucius if he should do well with it. Another witness, on being asked whether Mary E. Baker had stated to him that she bought the business for her brother, answered that he could not recollect but that she said "something to that effect." Sue T. Bone stated in her deposition that she had a conversation with Mary E. Baker in regard to this outfit in which deceased said she was putting in the furniture store and outfit for her brother's benefit, but did not put it in his name on account of his dissipation; that she intended to put it in his name if he proved all right; that she spoke as though she intended he should have full benefit of the horse, etc., if he proved all right.

Plaintiff was allowed to testify over defendant's specific objection that the other party to the contract was dead and that he was suing the executor of that person's will. He stated that he went to Memphis and purchased the wagon and shipped it to Thayer. On cross-examination he testified that his sister furnished the money. That he overhauled the wagon-bed, receiving wages by the day from his sister for this work; that the supplies therefor were charged to her and had been paid by her estate. He was recalled for further cross-examination by defendant and testified that the horse, harness and wagon were in Mrs. Baker's barn at the time of her death; that this outfit was kept there from the first as he had no barn, and that her feed was used for this horse; that he lived in one of her houses; that he had the keys to the store in his possession; and in answer to a question he stated, "The horse is mine, she gave it to me." He took care of the horse.

Annis Z. Fowler, sister of Mrs. Baker and plaintiff, residing in Rome, New York, in her deposition testified:

"Q.   Did you have any correspondence with Mrs. Baker a short time before her death in which she wrote you about a horse she had just bought, and if so, have you that letter?   A.   Yes.   I have not got the letter now. Q.   In that letter what did she say?   Just quote her language."   (Defendant objects for the reason that the letter is the best evidence and in its absence is not sufficiently and properly accounted for to entitle plaintiff to prove its contents.   Objection overruled, defendant excepted, etc.)   "A.   'I have just bought Lucius (meaning plaintiff) a nice outfit, horse, wagon and harness.   It would do you good to see how proud he is of it.   He thinks the horse is even nicer than Colonel was, but I can't allow that; but you come and see for yourself.' "

For the defendant, Clark Hall, cashier of a bank at Thayer, testified that a number of times Mrs. Baker had told him she wished to have something for Lucius to do, some work for him to keep him employed.   "Q.   Did the store or any of them connected with it keep a bank account?   A.   Mrs. Baker did, but I couldn't say whether deposits she made were from the store or from rents. Mrs. Baker paid the bills of the store and exercised ownership.   She said she bought the horse for a delivery horse for the store."   Geo. M. Durst testified as to the furniture store as follows:   "She said it was going to provide a job for Lucius; that she had to keep him anyhow, and she might as well provide something for him to do."   Henry Clark who made the harness testified that he made it according to plaintiff's orders, but that it was charged to the Bakers and the estate paid the bill.

NIXON, P. J.—I.   Appellant complains of the action of the trial court in permitting plaintiff to testify as a witness over appellant's objection.   Our statute (sec. 6354, R. S. 1909) provides:   " . . . and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless

the contract in issue was originally made with a person who is living and competent to testify." It was expressly held in the case of City of St. Joseph v. Baker, 86 Mo. App. 310, under this provision, that where one party is an administrator or executor, the other should not be permitted to testify. Scott v. Riley, 49 Mo. App. 1. c. 253, 255, was a replevin suit. The plaintiff sought to establish a gift *causa mortis* and was permitted to testify in this regard. This was held erroneous. See also, Meier v. Thieman, 90 Mo. 1. c. 441, 2 S. W. 435; Ess v. Griffith, 139 Mo. 1. c. 328, 40 S. W. 930; Scott v. Burfiend, 116 Mo. App. 71, 92 S. W. 175; Reynolds v. Reynolds, 45 Mo. App. 1. c. 627; Bagnell v. Bank, 76 Mo. App. 1. c. 124, 125. These authorities are in point and amply sustain appellant's contention. It may be remarked that what plaintiff stated in his examination in chief had nothing to do with the contract of gift and that *all* the damaging testimony from his lips was elicited by the defendant himself. But this cannot change the law that he should not have been permitted to take the stand. Death had sealed his sister's lips and the law sealed his.

II. Annis Z. Fowler in her deposition was allowed to state the contents of a letter received from her sister, Mary E. Baker, a short time before the latter's death. This testimony was the strongest adduced to prove the gift and stood practically alone except for plaintiff's own statement on cross-examination, "The horse is mine, she gave it to me." The only foundation laid for this secondary evidence of the contents of the letter was the statement of the deponent, "I have not got the letter now."

We are fully aware that these matters are largely within the discretion of the trial court. [Henry v. Diviney, 101 Mo. 1. c. 384, 13 S. W. 1057.] Had she been present as a witness, no doubt the court would have carried the inquiry further and ascertained where the letter was, whether it had been lost or mislaid or de-

stroyed. [Meyers v. Russell, 52 Mo. 26; Henry v. Diviney, supra; Redman v. Piersol, 39 Mo. App. 1. c. 175.] But the statement of deponent, "I have not got the letter now," is ambiguous. Does she mean that the letter had been lost or mislaid or destroyed? or does she mean that she did not have it with her at the place where her deposition was being taken? It was plaintiff's duty to make this clear and at least show that the primary evidence was not accessible. Her statement of the contents of this letter was very damaging to defendant's case and it should have been excluded under the circumstances. "And if a witness being examined in a foreign country, upon interrogatories sent out with a commission for that purpose, should in one of his answers state the contents of a letter which is not produced, that part of the deposition will be suppressed, notwithstanding, he being out of the jurisdiction, there may be no means of compelling him to produce the letter." [Greenleaf on Evi. (16 Ed.), p. 175.]

III. The parties both agreed in the circuit court to try the case with a jury of nine men. The court, over defendant's objection, instructed the jury as follows: "If you cannot all agree upon a verdict, but if seven or more of you do agree, then you should return such verdict into court signed by all the jurors agreeing thereto." The verdict in this case was signed by seven of the jurors, and appellant urges this as error.

Section 7280, Revised Statutes 1909, provides: "In all trials of civil actions in any court of record in this state a jury shall consist of twelve men possessing the qualifications as are or may hereafter be provided by law: Provided, that three-fourths or more of the jurors concurring may return a verdict, which shall have the same force and effect as though rendered by the entire panel. If a verdict be rendered by the entire panel the foreman alone may sign it, but if rendered by a less

number than the entire panel such verdict shall be signed by all the jurors who agree to it."

This has become a fixed principle in our system of jurisprudence. It was thought that such a provision would afford substantial justice and at the same time hasten the termination of suits. To deny the plaintiff in this case the privilege of this principle would allow one party to profit from a fault as much his own as that of his adversary. Very little foresight would have disclosed that just such a situation was more than likely to arise. It will not be presumed that plaintiff wished his case submitted to a jury of nine who must all concur in a verdict for him. If the parties desired to take this jury out of the statutory three-fourths rule, they should have made such an agreement. We are disposed to hold that material error did not ensue. The Constitution itself seems to put this matter beyond question. Sec. 28, art. II, provides: " . . . And that in the trial by jury of all civil cases in courts of record, three fourths of the members of the jury concurring may render a verdict. . . . " This provision is self-executing. [Sharp v. National Biscuit Co., 179 Mo. 553, 78 S. W. 787.]

IV. Appellant argues that the trial court erred in overruling his demurrer to plaintiff's evidence interposed at the close of plaintiff's evidence. The trouble with this contention is that after the demurrer was overruled, defendant did not rest on he demurrer but put in his tetimony. That waived the demurrer. [Frye v. Railway, 200 Mo. 377, 98 S. W. 566; Remmers v. Shubert, (Mo. App.), 134 S. W. 1042.] The demurrer was not again presented at the close of all the evidence and the court was not asked to instruct the jury to return a verdict for the defendant. Hence the court committed no error in submitting the case to the jury.

V. It is quite unnecessary for us to consider appellant's assignment in his motion for a new trial that the verdict is contrary to and against the weight of the

evidence. Under the disposition we are making of this case it will be subject to re-trial when the evidence may be entirely different and a discussion of the sufficiency of the evidence in this record would serve no useful purpose.

Any discussion of the law as to gifts *inter vivos* at this late day can only involve a re-statement of what has been announced time and again. MACFARLANE, J., In re Estate of Soulard, 141 Mo. l. c. 656, 657, 43 S. W. 617, said: "To constitute a valid gift *inter vivos,* there must be an intention to give and a delivery to the donee, or to someone for him, of the property given. An intention of the donor to give is not alone sufficient; the intention must be executed by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a completely executed transfer to the donee of the present right of the property and the possession. The donee must become the owner of the property given. (Cases cited.) A gift cannot be made to take effect in the future. Such a transaction would only amount to a promise to make a gift in the future, and being without consideration is void. (Cases cited.)" The instructions given by the court on this question substantially embodied the above principles.

For the reasons stated, the judgment will be reversed and the cause remanded. All concur.